1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

ANGELINA GILLARD and COLE GILLARD,
both as individuals and on behalf of all others
similarly situated,

NO.  3:25-cv-5971

11

Plaintiffs,

**CLASS ACTION COMPLAINT**

12
13

v.

**JURY TRIAL DEMANDED**

14
15

CARENEXA, LLC f/k/a BLACKFLY
INVESTMENTS, LLC, d/b/a MOLECULAR
TESTING LABS, and NTIRETY, INC.,

16

Defendants.

17

Plaintiffs Angelina Gillard and Cole Gillard, both individually and on behalf of all

18

others similarly situated, bring this action against Defendants CareNexa, LLC f/k/a Blackfly

19

Investments, LLC d/b/a Molecular Testing Labs ("MTL") and Ntirety, Inc. ("Ntirety")

20

(collectively, "Defendants"), and each of their present, former, or future direct and indirect

21

parent companies, subsidiaries, affiliates, agents, members, and/or other related entities.

22

Plaintiffs seek to obtain damages, restitution, and injunctive relief for the proposed Class, as

23

defined below (the "Class" or "Class Members"), from the Defendants. Plaintiffs make the

24

following allegations upon information and belief, except as to their own actions, the

25

investigation of counsel, and the facts that are a matter of public record:

26

CLASS ACTION COMPLAINT - 1

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

# NATURE OF THE ACTION

1.      This action arises out of the public exposure of Plaintiffs' and Class Members' Personally Identifying Information ("PII" or "Private Information"), which was in Defendants' possession during a cyberattack that occurred on or about March 7, 2025, to on or about March 11, 2025, caused by Defendants' collective failures to adequately safeguard that Private Information (the "Data Breach").

2.      According to Molecular Testing Labs ("MTL"), and the Notice of Data Breach ("Notice"), the private information that was exposed in the Data Breach included dates of birth; dates of collection; diagnosis codes; driver's license numbers and issuing states; full-face photographs; gender; health plan group and member identification numbers; health plan provider names; height and weight; laboratory results; medications; patient addresses; patient identification numbers; patient names; phone numbers; provider information; full Social Security numbers; and tracking numbers.

3.      Defendant MTL provides and performs diagnostic tests which include infections disease panels, wellness analysis, and at home collection kits. They provide these services mainly for healthcare providers, public health agencies, and digital health companies around the world.[1]

4.      Defendant Ntirety is an information technology solutions provider specializing in infrastructure management, cybersecurity, data services, and regulatory compliance. Upon information and belief, MTL contracted with Ntirety to host, support, and safeguard its computer systems from unauthorized access and cyberattacks. Those very systems, however, were ultimately compromised in the Data Breach.

5.      The Defendants failed to undertake the adequate measures to safeguard the Private Information of Plaintiff and the proposed Class Members.

---

[1] Molecular Testing Labs, *About Us,* https://moleculartestinglabs.com (last visited Oct. 21, 2025

CLASS ACTION COMPLAINT - 2

6.      Although Defendants purportedly discovered the Data Breach on or about March 11, 2025, they failed to immediately notify and warn Plaintiff and Class Members. Defendants waited over seven months until on or around October 13, 2025, when MTL provided written notice to Plaintiffs and the Class.

7.      Upon information and belief, Plaintiffs' and Class Members' Private Information is available on the Dark Web as a result of the Data Breach.

8.      As a direct and proximate result of Defendants' failures to protect current and former patients' sensitive Private Information and warn them promptly and fully about the Data Breach, Plaintiffs and the proposed Class Members have suffered widespread injury and damages necessitating the Plaintiffs to seek relief on a class wide basis.

**JURISDICTION**

9.      This Court has personal jurisdiction over Defendants because Defendant MTL's principal place of business is within this District, and Defendants regularly conduct substantial business activities here. Defendants have sufficient minimum contacts with the State of Washington and this District such that the exercise of personal jurisdiction is consistent with traditional notions of fair play and substantial justice under the Due Process Clause.

10.     This Court also has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws of the United States, and under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the proposed class exceeds 100 members, the aggregate amount in controversy exceeds $5,000,000, and at least one class member is a citizen of a state different from the Defendants.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' and the Class Members' claims occurred within this District, and because Defendant MTL resides in this District for purposes of venue.

CLASS ACTION COMPLAINT - 3

1

**PARTIES**

2      12.     Plaintiffs Angelina Gillard and Cole Gillard are, and at all relevant times were,

3   individual citizens of the State of Alabama. They currently reside in Shelby County, Alabama,

4   and resided there at the time of the data breach described herein. Plaintiffs were patients of a

5   physician who utilized the Defendants' services.

6      13.     Defendant MTL Labs is a medical laboratory services provider with its principal

7   place of business located in Vancouver, WA. MTL is a Limited Liability Company that is

8   organized and exists under the laws of the State of Washington.

9      14.     Defendant Ntirety is a corporation organized and existing under the laws of the

10  State of Delaware, with its principal place of business in Chicago, Illinois.

11

**FACTUAL BACKGROUND**

12     15.     MTL is a laboratory and medical services provider located in Washington State.

13     16.     MTL offers "high-complexity molecular testing with an extensive portfolio of

14  services, including infectious disease, toxicology, targeted sequencing, single-nucleotide

15  polymorphism (SNP) genotyping, and high-resolution immune profiling." [2]

16     17.     Defendant Ntirety offers "comprehensive solutions for modern IT" by

17  "help[ing] organizations manage and secure today's complex IT environment. [Ntirety's]

18  comprehensive managed services cover infrastructure, security, data, and compliance,

19  connecting mission-critical data across highly secure, available, and resilient environments."

20  Ntirety provides services to over 2,500 enterprise customers, including Defendant MTL, and

21  holds over 650 IT and security certifications. [3]

22     18.     To provide services to its patients, Defendant MTL acquires, stores, processes,

23  analyzes, and otherwise utilizes Plaintiffs' and Class Members' personally identifiable

24  information, including, but not limited to, first and last name, Social Security number, date of

25  ─────────────────────
[2] https://moleculartestinglabs.com/services/ (last visited Oct. 22, 2025); see also
26  https://moleculartestinglabs.com/who-we-serve/ (last visited Oct. 22, 2025).

[3] *About Ntirety*, https://www.ntirety.com/company/ (last visited Oct. 22, 2025).

CLASS ACTION COMPLAINT - 4

birth, ("PII") and Private Health Information ("PHI," and collectively with PII, "Private Information").

19.    When Defendants collect this Private Information, they promise to use reasonable care to protect and safeguard the Private Information from unauthorized disclosure. Plaintiff and Class Members would not have provided their Private Information to Defendants had they known that those Defendants would not employ data security measures sufficient to protect the confidentiality of their Private Information and that Defendant MTL would choose a vendor like Ntirety that would store Plaintiff's and Class Members' Private Information on insecure computer systems.

20.    Defendants maintain privacy policies in which they promise to institute certain data security measures to maintain the confidentiality of individuals' Private Information.[4]

21.    Despite their alleged commitments to securing sensitive patient data, Defendants did not follow industry standard practices in securing Plaintiff's and Class Members' Private Information and failed to protect the Private Information of Plaintiff and the proposed Class Members from unauthorized disclosure in the Data Breach. In particular, Ntirety did not follow industry standard cybersecurity practices to reasonably safeguard the Private Information from a cyberattack.

22.    On information and belief according to MTL, beginning on or around March 7, 2025, and to on or about March 11, 2025, MTL experienced a cyberattack to its computer information technology systems managed by Ntirety by an unauthorized threat actor, which resulted in the unauthorized disclosure and exfiltration of Plaintiffs' and Class Members'

---

[4] *Privacy Policy*, Molecular Testing Labs, https://moleculartestinglabs.com/privacy-policy/ ("We have implemented measures designed to secure your Personal Information from accidental loss and from unauthorized access, use, alteration and disclosure. Molecular uses secure servers behind firewalls to store information, and payment transactions and personally identifiable information are encrypted using SSL technology.") (last accessed Oct. 22, 2025); see also *Privacy Policy*, Ntirety, https://www.ntirety.com/privacy-policy/ ("Information collected by the technologies described in this Privacy Notice is protected by SSL 128 bit encryption technology during transmission. Information kept by us in our business is protected using industry standard security measures.") (last accessed Oct. 22, 2025).

CLASS ACTION COMPLAINT - 5

Private Information. The compromised data included dates of birth; dates of collection; diagnosis codes; driver's license numbers and issuing states; full-face photographs; gender; health plan group and member identification numbers; health plan provider names; height and weight; laboratory results; medications; patient addresses; patient identification numbers; patient names; phone numbers; provider information; full Social Security numbers; and tracking numbers.[5]

23.    Despite first becoming aware of a cyber security incident on or around March 11, 2025, Defendants did not notify Plaintiffs and other Class Members until on or around October 13, 2025 ("Notice of Data Breach"). [6]

24.    Nevertheless, it was over seven months before any of the Defendants informed affected Class Members of the unauthorized disclosure of their Personal Information in the Data Breach.

25.    MTL's Data Breach Notice did not further elaborate on the nature or extent of the Data Breach, omitting its scope or size.

26.    As a result of the Data Breach, Plaintiffs and Class Members suffered injury and ascertainable losses in the form of the present and imminent threat of fraud and identity theft, loss of the benefit of their bargain, out-of-pocket expenses, loss of value of their time reasonably incurred to remedy or mitigate the effects of the attack, and the loss of, and diminution in, value of their personal information.

27.    In addition, Plaintiffs' and Class Members' sensitive confidential information was compromised and unlawfully accessed due to the Data Breach. This information, while compromised and taken by unauthorized third parties, remains also in the possession of the Defendants, and without additional safeguards and independent review and oversight, remains vulnerable to additional hackers and theft.

---

[5] Notice of Data Breach Letter from Defendants to Plaintiffs (Oct. 13, 2025) (attached as Ex. A)

[6] *Id.*

CLASS ACTION COMPLAINT - 6

28.     The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect Plaintiffs' and Class Members' Private Information.

29.     Plaintiffs bring this class action lawsuit on behalf of those similarly situated to address Defendants' inadequate safeguarding of Class Members' Private Information that the Defendants collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs and other Class Members that their information had been subject to the unauthorized access by an unknown third party.

30.     Defendants maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendants' computer network in a condition vulnerable to cyberattacks and ransomware malware.

31.     The mechanism of the hacking and potential for improper disclosure of Private Information was a known risk to Defendants and similar entities, and thus Defendants were on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition and vulnerable to theft.

32.     Defendants disregarded the rights of Plaintiffs and Class Members by, inter alia, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard patients' Private Information; failing to take standard and reasonably available steps to prevent the Data Breach; failing to properly train its staff and employees on proper security measures; and failing to provide Plaintiffs and Class Members prompt notice of the Data Breach.

33.     Plaintiffs' and Class Members' identities are now at risk because of Defendants' negligent conduct since the Private Information that the Defendants collected and maintained is now in the hands of data thieves. This present risk will continue for their respective lifetimes.

CLASS ACTION COMPLAINT - 7

34.      Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, e.g., opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

35.      As a result of the Data Breach, Plaintiffs and Class Members have been exposed to a present and imminent risk of fraud and identity theft. Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

36.      By waiting to notify Plaintiffs and Class Members for as long as seven months, Defendants harmed Plaintiffs and Class Members. Said differently, if Defendants had notified Plaintiffs and Class Members at or around the time the Data Breach was first discovered, Plaintiffs and Class Members would be in a better position to protect themselves.

37.      In response to the real and imminent harm to Plaintiffs and the Class, the Defendants have not offered redress. Plaintiffs and Class Members will incur out-of-pocket costs for, e.g., purchasing additional credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft beyond the services offered by Defendants.

38.      Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed during the Data Breach.

39.      Plaintiffs seek remedies including, but not limited to, compensatory damages, nominal damages, and reimbursement of out-of-pocket costs.

40.      Plaintiffs also seek injunctive and equitable relief to prevent future injury on behalf of themselves and the putative Class.

**A. Defendant MTL's Business**

41.      Defendant specializes in molecular diagnostics by using techniques in genetics,

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  biochemistry, and data analytics to test for infectious diseases, genetic conditions, wellness

2  monitoring and more.[7]

3       42.     Defendant obtained the Private Information of Plaintiffs and Class Members as

4  part of the process providing medical care.

5       43.     Defendant publicly posts policies regarding information security, including a

6  "Privacy Policy" page on its website.

7       44.     Defendant's "Data Security" heading on its "Privacy Policy" page, states that

8  Defendant is "[has] implemented measures designed to secure your Personal Information from

9  accidental loss and from unauthorized access, use, alteration and disclosure." [8]

10       45.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class

11  Members' Private Information, Defendant assumed legal and equitable duties and knew or

12  should have known that it was responsible for protecting Plaintiffs' and Class Members'

13  Private Information from unauthorized disclosure.

14       46.     Plaintiffs and the Class Members have taken reasonable steps to maintain the

15  confidentiality of their Private Information. Defendant failed to implement industry standard

16  protections for that sensitive information.

17       47.     Plaintiffs and the Class Members relied on Defendant to keep their Private

18  Information confidential and securely maintained, to use this information for business and

19  health purposes only, and to make only authorized disclosures of this information.

20  **B. Defendant Ntirety's Business**

21       48.     Defendant specializes in providing managed IT infrastructure, cloud

22  management, security, data services, and compliance solutions to corporations and business

23

24

---

25  [7] Molecular Testing Labs, *Lab Services — The Science and Diagnostic Services Inside Molecular Testing Labs*, https://moleculartestinglabs.com/services/ (last visited Oct. 21, 2025).

26  [8] Molecular Testing Labs, *Privacy Policy*, https://moleculartestinglabs.com/privacy-policy/ (last visited Oct. 21, 2025).

CLASS ACTION COMPLAINT - 9

1   enterprises. [9]

2       49.    Defendant obtained the Private Information of Plaintiffs and Class Members

3   while providing such IT services, data management, and security to its clients. [10]

4       50.    Defendant publicly posts their policies regarding their data and information

5   handling and security, which includes a "Privacy Policy" on their website. [11]

6       51.    Defendant's Privacy Policy states that the Data retained "is protected… using

7   industry standard security measures." [12]

8       52.    By obtaining, collecting, and deriving a benefit from Plaintiffs' and Class

9   Members' Private Information, Ntirety assumed legal and equitable duties and knew or should

10  have reasonably known that they were responsible for protecting Plaintiffs' and Class Members

11  Private Sensitive Information from unauthorized disclosure.

12      53.    Plaintiffs and the Class Members have taken reasonable steps to maintain the

13  confidentiality of their Private Information. Defendant has failed to implement industry

14  standard protection for that sensitive information despite publicly representing that it uses

15  industry standard security measures.

16      54.    Plaintiffs and the Class Members relied on the Defendant to keep their Private

17  Information confidential and securely maintained. To use this information only for business,

18  data management, and security service purposes only, and to make only properly authorized

19  disclosure of that information.

20

21

22

23

[9] *See* Ntirety, Inc., *Comprehensive Managed Services Provider* ("For over 25 years, we've been offering robust solutions in managed infrastructure, security, data services, and compliance.") https://www.ntirety.com/ (last visited Oct. 24, 2025).

24  [10] *See* Ntirety, Inc., *Privacy Policy* ("At Ntirety, Inc. ('Ntirety') we respect your privacy. … Information kept by us in our business is protected using industry standard security measures.")

25  https://www.ntirety.com/privacy-policy/ (last updated Mar. 3, 2022).

26  [11] *Id.*

[12] *Id.*

CLASS ACTION COMPLAINT - 10

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**C. The Attack and Data Breach**

55.    On or about March 11, 2025, Defendants became aware of a data security incident where suspicious activity occurred within its network. [13]

56.    Defendants then engaged a national cybersecurity firm in response to determine how the network was accessed and the scope of the incident. Defendants have not revealed how the network was accessed.[14]

57.    As a result of the ransomware attack, Plaintiffs' and Class Members' Private Information, including their dates of birth; dates of collection; diagnosis codes; driver's license numbers and issuing states; full-face photographs; gender; health plan group and member identification numbers; health plan provider names; height and weight; laboratory results; medications; patient addresses; patient identification numbers; patient names; phone numbers; provider information; full Social Security numbers; and tracking numbers, were accessed and exfiltrated by criminal third parties.

58.    Based on its investigation, Defendants admit that Plaintiffs' and Class Members' Private Information was accessed and exfiltrated by an unauthorized third party.

59.    On information and belief, the Private Information accessed by hackers was not encrypted.

60.    The targeted attack was expressly designed to gain access to and exfiltrate private and confidential data, including (among other things) the Private Health Information of persons such as Plaintiffs and the Class Members.

61.    Due to Defendant's inadequate security measures, Plaintiffs and the Class Members now face a present, immediate, and ongoing risk of fraud and identity theft and must deal with that threat forever.

---

[13] Steve Alder, *Business Associate Sued by HIPAA-Covered Entity over Alleged HIPAA Security Rule Failures*, HIPAA J. (Apr. 21, 2025), https://www.hipaajournal.com/business-associate-sued-hipaa-covered-entity-ba-hipaa-failure/ (last accessed Oct. 21, 2025).

[14] Notice of Data Breach Letter from Defendants to Plaintiffs (Oct. 13, 2025) (attached as Ex. A).

CLASS ACTION COMPLAINT - 11

62.     Due to Defendants' inadequate security measures, Plaintiffs' and Class Members' Private Information is now in the hands of cyberthieves.

63.     Defendants failed to comply with their obligations to keep such information confidential and secure from unauthorized access, as well as their obligations to timely notify Plaintiffs and Class Members.

### i.  The Data Breach as Foreseeable

64.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach.

65.     In 2019, a record 1,473 data breaches occurred, resulting in approximately 164,683,455 sensitive records being exposed, a 17% increase from 2018.  The 525 breaches reported in 2019 exposed nearly 40 million sensitive records (39,378,157), compared to only 369 breaches that exposed just over ten million sensitive records (10,632,600) in 2018.[15] These incidents continue to rise in frequency, with an estimated 1,862 data breaches occurring in 2021.[16]

66.     In 2024, 16.97% of all data compromises targeted the healthcare industry, and healthcare was the second most targeted industry in 2024. [17]

67.     The increase in such attacks, and the attendant risk of future attacks, was widely known to the public and anyone in the Defendants' industry. According to IBM's 2025 report, "On a long enough timeline, data breaches are inevitable." [18]

---

[15] Identity Theft Resource Center, *2019 End-of-Year Data Breach Report*, at 15 (2020).

[16] Bree Fowler, *Data Breaches Break Record in 2021*, CNET (Jan. 24, 2022), https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last visited Oct. 21, 2025).

[17] See *2024 Data Breach Report*, Identity Theft Resource Center (Jan. 2025) available at https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last accessed October 21, 2025).

[18] IBM, "Cost of a data breach 2025: The AI oversight gap," available at https://www.ibm.com/reports/data-breach (last visited Oct. 22, 2025).

CLASS ACTION COMPLAINT - 12

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

68.     According to the U.S. Department for Health and Human Services, "2022 Healthcare Cybersecurity Year in Review, and a 2023 Look-Ahead," "[h]ealthcare data breaches have doubled in 3 years." [19]

69.     A ransomware attack like that experienced by the Defendants is a type of cyberattack that is frequently used to target healthcare companies due to the sensitive patient data they maintain.[20]  In a ransomware attack the attackers use software to encrypt data on a compromised network, rendering it unusable and demanding payment to restore control over the network.[21]

70.     Companies should treat ransomware attacks as any other data breach incident because ransomware attacks do not just hold networks hostage, "ransomware groups sell stolen data in cybercriminal forums and dark web marketplaces for additional revenue." [22] As cybersecurity expert Emisoft warns, "[a]n absence of evidence of exfiltration should not be construed to be evidence of its absence […] the initial assumption should be that data may have been exfiltrated." [23]

71.     An increasingly prevalent form of ransomware attack is the "encryption+exfiltration" attack in which the attacker encrypts a network and exfiltrates the

---

[19] U.S. Department for Health and Human Services, The Health Sector Cybersecurity Coordination Center (HC3), "2022 Healthcare Cybersecurity Year in Review, and a 2023 Look-Ahead," February 9, 2023, avail. at https://www.hhs.gov/sites/default/files/2022-retrospective-and-2023-look-ahead.pdf

[20] Danny Palmer, Ransomware warning: *Now attacks are stealing data as well as encrypting it*, ZDNet (July 14, 2020), https://www.zdnet.com/article/ransomware-warning-now-attacks-are-stealing-data-as-well-as-encrypting-it/ (last visited Oct. 21, 2025).

[21] Cybersecurity & Infrastructure Security Agency, Ransomware: *The Data Exfiltration and Double Extortion Trends*, https://www.cisecurity.org/insights/blog/ransomware-the-data-exfiltration-and-double-extortion-trends (last visited Oct. 21, 2025).

[22] Jamie Mason, *The Chance of Data Being Stolen in a Ransomware Attack Is Greater Than One in Ten*, Emsisoft Malware Lab (July 13, 2020), https://www.emsisoft.com/en/blog/36569/the-chance-of-data-being-stolen-in-a-ransomware-attack-is-greater-than-one-in-ten/ (last visited Oct. 21, 2025).

[23] *Id.*

CLASS ACTION COMPLAINT - 13

data contained within.[24]  In 2020, over 50% of ransomware attackers exfiltrated data from a network before encrypting it.[25]  Once the data is exfiltrated from a network, its confidential nature is destroyed and it should be "assume[d] it will be traded to other threat actors, sold, or held for a second/future extortion attempt."[26] And even where companies pay for the return of data, attackers often leak or sell the data regardless because there is no way to verify copies of the data that is destroyed.[27]

72.     Upon information and belief, the cyberattack was targeted at the Defendants, due to their status as healthcare and data providers that collect, create, and maintain Private Information on their computer networks and/or systems.

73.     Upon information and belief, Plaintiffs' and Class Members' Private Information was compromised and acquired in the Data Breach.

74.     The files containing Plaintiffs' and Class Members' Private Information, that were targeted and stolen from Defendants, included their PII and/or PHI.

75.     Because of this targeted cyberattack, data thieves were able to gain access to and obtain data from Defendants that included the Private Information of Plaintiffs and Class Members.

76.     As evidenced by the Data Breach's occurrence, the Private Information contained in Defendants' network was not encrypted. Had the information been properly encrypted, the data thieves would have exfiltrated only unintelligible data.

77.     Plaintiffs further believe that their Private Information and that of Class

---

[24] Bill Siegel, *Q3 2020 Ransomware Marketplace Report*, CoveWare (Aug. 4, 2020), https://www.coveware.com/blog/q3-2020-ransomware-marketplace-report (last visited Oct. 21, 2025).

[25] Cybersecurity and Infrastructure Security Agency, *Ransomware FAQs*, https://www.cisa.gov/stopransomware/ransomware-faqs (last visited Oct. 21, 2025).

[26] *Id.*

[27] *Id.*

CLASS ACTION COMPLAINT - 14

1  Members was or soon will be published to the dark web, where it will be available to purchase,

2  because that is the *modus operandi* of cybercriminals.

3      78.    Defendants had obligations created by the FTC Act, HIPAA, contract, state and

4  federal law, common law, and industry standards to keep Plaintiffs' and Class Members'

5  Private Information confidential and to protect it from unauthorized access and disclosure.

6          **ii.  Defendants Failed to Properly Protect Plaintiffs' and Class
           Members' Private Information**

7

8      79.    Defendants did not use reasonable security procedures and practices appropriate

   to the nature of the sensitive, unencrypted Private Information it was maintaining for Plaintiffs

9

10  and Class Members, causing the exposure of Private Information for an undisclosed number of

   individuals.

11

12     80.    In addition to the specific concerns in the medical care and health services

13  sector, the FTC has promulgated numerous guides which highlight the importance of

   implementing reasonable data security practices. According to the FTC, the need for data

14

   security should be factored into all business decision-making. [28]

15

16     81.    In 2016, the FTC updated its publication, *Protecting Personal Information: A

   *Guide for Business*, which established cyber-security guidelines for businesses. The guidelines

17

   note that businesses should protect the personal information that they keep; properly dispose of

18

   personal information that is no longer needed; encrypt information stored on computer

19

   networks; understand their network's vulnerabilities; and implement policies to correct any

20

   security problems.[29]  The guidelines also recommend that businesses use an intrusion detection

21

   system to expose a breach as soon as it occurs; monitor all incoming traffic for activity

22

   indicating someone is attempting to hack the system; watch for large amounts of data being

23

24  [28] Federal Trade Commission, *Start with Security: A Guide for Business* (Aug. 16, 2023),
   https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final

25  _0.pdf (last visited Oct. 24, 2025).

26  [29] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*,
   https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-
   information.pdf (last visited Oct. 21, 2025).

CLASS ACTION COMPLAINT - 15

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   transmitted from the system; and have a response plan ready in the event of a breach.[30]

2   82.     The FTC further recommends that companies not maintain Private Information

3   longer than is needed for authorization of a transaction; limit access to sensitive data; require

4   complex passwords to be used on networks; use industry-tested methods for security; monitor

5   for suspicious activity on the network; and verify that third-party service providers have

6   implemented reasonable security measures.

7   83.     Defendants failed to properly implement basic data security practices explained

8   and set forth by the FTC.

9   84.     Defendants' failure to employ reasonable and appropriate measures to protect

10  against unauthorized access of Private Information constitutes an unfair act or practice

11  prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

12  **Defendants failed to comply with industry standards**

13  85.     Defendants did not utilize industry standards appropriate to the nature of the

14  sensitive, unencrypted information they were maintaining for Plaintiffs and Class Members,

15  causing the exposure of Private Information for thousands of individuals.

16  86.     As explained by the Federal Bureau of Investigation, "[p]revention is the most

17  effective defense against cyberattacks] and it is critical to take precautions for protection."[31]

18  87.     To prevent and detect cyberattacks, including the cyberattack that resulted in the

19  Data Breach, Defendants could and should have implemented, as recommended by the United

20  States Government, the following measures:

21          •     Implement an awareness and training program.  Because end users are
22                targets, employees and individuals should be aware of the threat of
                  cyberattacks and how it is delivered.
23

24  _____

25  [30] *Id.*

26  [31]  Federal Bureau of Investigation, *Ransomware Prevention and Response for CISOs*,
    https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view
    (last visited Oct. 21, 2025).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common cyberware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

CLASS ACTION COMPLAINT - 17

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[32]

88.     To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**.  Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**.  Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net) ….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**.  Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**.  If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**.  Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

---

[32] *Id.* at 3–4.

CLASS ACTION COMPLAINT - 18

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic....[33]

89.    To prevent and detect cyberattacks, including the cyberattack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates

- Use threat and vulnerability management

- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

- Monitor for adversarial activities

- Hunt for brute force attempts

- Monitor for cleanup of Event Logs

- Analyze logon events

**Harden infrastructure**

- Use Windows Defender Firewall

---

[33] *See* Security Tip (ST19-001) Protecting Against Ransomware (October 21, 2020), available at https://netcoresupport.freshdesk.com/support/discussions/topics/26000006134 (last visited Oct. 21, 2025).

CLASS ACTION COMPLAINT - 19

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

- Enable tamper protection

- Enable cloud-delivered protection

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[34]

90.     As described above, experts studying cyber security routinely identify the healthcare sector as being particularly vulnerable to cyberattacks because of the value of the Private Information they collect and maintain.

91.     Several best practices have been identified that at a minimum should be implemented by businesses such as the Defendants, including, but not limited to, the following: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data, and; limiting which employees can access sensitive data.

92.     Other best cybersecurity practices that are standard include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

93.     Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

---

[34] Microsoft Security Blog, *Human-Operated Ransomware Attacks: A Preventable Disaster* (Mar. 5, 2020), https://www.microsoft.com/en-us/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Oct. 21, 2025).

CLASS ACTION COMPLAINT - 20

94.     Given that Defendants were storing the Private Information of thousands of individuals—and likely much more than that—Defendants could and should have implemented all of the above measures to prevent cyberattacks.

95.     The occurrence of the Data Brach indicates that the Defendants failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of thousands of individuals' Private Information.

**Defendants' Breach**

    *i.*    ***Defendants failed to properly protect Plaintiffs' and Class Members' Private Information***

96.     Defendants breached their obligations to Plaintiffs and Class Members and were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.   Failing to maintain an adequate data security system to reduce the risk of data breaches, cyber-attacks, hacking incidents, and ransomware attacks;

    b.   Failing to adequately protect patients' Private Information;

    c.   Failing to properly monitor its own data security systems for existing or prior intrusions;

    d.   Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act, and;

    e.   Failing to adhere to industry standards for cybersecurity.

97.     As the result of computer systems in need of security upgrades, and inadequate procedures for handling email phishing attacks, viruses, malignant computer code, and hacking attacks, Defendants negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information.

98.     Accordingly, as outlined below, Plaintiffs and Class Members now face a present, increased, and immediate risk of fraud and identity theft.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

*ii.* **Cyberattacks and data breaches cause disruption and put individuals at an increased risk of fraud and identity theft**

2    99.    The United States Government Accountability Office released a report in 2007

3  regarding data breaches ("GAO Report") in which it noted that victims of identity theft will

4  face "substantial costs and time to repair the damage to their good name and credit record."[35]

5    100.    That is because any victim of a data breach is exposed to serious ramifications

6  regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable

7  information is to monetize it. They do this by selling the spoils of their cyberattacks on the

8  black market to identity thieves who desire to extort and harass victims, take over victims'

9  identities to engage in illegal financial transactions under the victims' names. Because a

10  person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains

11  about a person, the easier it is for the thief to take on the victim's identity or otherwise harass or

12  track the victim. For example, armed with just a name and date of birth, a data thief can utilize

13  a hacking technique referred to as "social engineering" to obtain even more information about a

14  victim's identity, such as a person's login credentials or Social Security number.  Here, the

15  cyberthieves already have the Social Security numbers and lots of other static PII.

16    101.    The FTC recommends that identity theft victims take several steps to protect

17  their personal and financial information after a data breach, including contacting one of the

18  credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years

19  if someone steals their identity), reviewing their credit reports, contacting companies to remove

20  fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting

21  their credit reports.[36]

22    102.    Identity thieves use stolen personal information such as Social Security numbers

23  for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance

24

25  [35] *See* U.S. Gov. Accounting Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (2007), available at https://www.gao.gov/new.items/d07737.pdf.

26  [36] *See IdentityTheft.gov*, Federal Trade Commission, https://www.identitytheft.gov/Steps (last visited Oct. 21, 2025).

CLASS ACTION COMPLAINT - 22

1   fraud.

2       103.    Identity thieves can also use Social Security numbers to obtain a driver's license

3   or official identification card in the victim's name but with the thief's picture; use the victim's

4   name and Social Security number to obtain government benefits; or file a fraudulent tax return

5   using the victim's information. In addition, identity thieves may obtain a job using the victim's

6   Social Security number, rent a house in the victim's name, and may even give the victim's

7   personal information to police during an arrest resulting in an arrest warrant being issued in the

8   victim's name.

9       104.    Moreover, theft of Private Information is also gravely serious. The asset that is

10  one's Private Information contains extremely valuable property rights.[37]

11      105.    Its value is axiomatic, considering the value of "big data" in corporate America

12  and the fact that the consequences of cyber thefts include heavy prison sentences. Even this

13  obvious risk to reward analysis illustrates beyond doubt that Private Information has

14  considerable market value.

15      106.    It must also be noted there may be a substantial time lag – measured in years –

16  between when harm occurs and when it is discovered, and also between when Private

17  Information and/or financial information is stolen and when it is used.

18      107.    According to the U.S. Government Accountability Office, which conducted a

19  study regarding data breaches:

20          [L]aw enforcement officials told us that in some cases, stolen
            data may be held for up to a year or more before being used to
21          commit identity theft. Further, once stolen data have been sold or
            posted on the Web, fraudulent use of that information may
22          continue for years. As a result, studies that attempt to measure the
            harm resulting from data breaches cannot necessarily rule out all
23          future harm.

24  _____

25  [37] *See, e.g.*, John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally
    Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech.
    11, at *3–4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is
26  rapidly reaching a level comparable to the value of traditional financial assets.") (citations
    omitted).

CLASS ACTION COMPLAINT - 23

1    *See* GAO Report, at p. 29.

2         108.    Private Information is such a valuable commodity to identity thieves that once

3    the information has been compromised, criminals often trade the information on the "cyber

4    black-market" for years.

5         109.    There is a strong probability that entire batches of stolen information have been

6    dumped on the black market and are yet to be dumped on the black market, meaning Plaintiffs

7    and Class Members are at an increased risk of fraud and identity theft for many years into the

8    future.

9         110.    Thus, Plaintiffs and Class Members must vigilantly monitor their financial

10   accounts for many years to come.

11        111.    Private Information is particularly valuable because criminals can use it to target

12   victims with frauds and scams; once stolen, fraudulent use of that information and damage to

13   victims may continue for years.

14        112.    For example, the Social Security Administration has warned that identity thieves

15   can use an individual's Social Security number to apply for additional credit lines.[38] Such fraud

16   may go undetected until debt collection calls commence months, or even years, later. Stolen

17   Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for

18   unemployment benefits, or apply for a job using a false identity.[39] Each of these fraudulent

19   activities is difficult to detect. An individual may not know that his or her Social Security

20   number was used to file for unemployment benefits until law enforcement notifies the

21   individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered

22   only when an individual's authentic tax return is rejected.

23        113.    Moreover, it is not an easy task to change or cancel a stolen Social Security

24   number.

25   _____

26   [38] *Identity Theft and Your Social Security Number*, Social Security Administration, at 1 (2018), available at https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Oct. 21, 2025).
[39] *Id.* at 4.

CLASS ACTION COMPLAINT - 24

114.    An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[40]

115.    The data at issue here, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market." [41]

116.    For this reason, Defendants knew or should have known about these dangers and strengthened their network and data security systems accordingly. Defendants were put on notice of the substantial and foreseeable risk of harm from a data breach, yet they failed to properly prepare for that risk.

### iii.    *Angelina Gillard, Cole Gillard, and Class Members' Harms and Damages*

117.    To date, Defendants have done little to adequately protect Plaintiffs and Class Members, or to compensate them for their injuries sustained in this data breach. Defendants' data breach notice letter completely downplays and disavows the theft of Plaintiffs' and Class Members' Private Information, when the facts demonstrate that the Private Information was accessed and exfiltrated. Defendants did not offer any fraud monitoring services, which places the burden squarely on Plaintiffs and Class Members by requiring them to expend time signing up for that service, as opposed to automatically enrolling all victims of this cybercrime.

---

[40] Brian Naylor, *Data Stolen by Anthem's Hackers Has Millions Worrying About Identity Theft*, NPR (Feb. 9, 2015), https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited Oct. 21, 2025

[41] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10× Price of Stolen Credit Card Numbers*, Network World (Feb. 6 2015), https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Oct. 21, 2025).

CLASS ACTION COMPLAINT - 25

1        118.    Plaintiffs and Class Members have been injured and damaged by the

2  compromise of their Private Information in the Data Breach.

3        119.    Plaintiffs' Private Information (which specifically includes names and Social

4  Security numbers) was compromised in the Data Breach and is now in the hands of the

5  cybercriminals who accessed Defendants' network. Class Members' Private Information, as

6  described above, was similarly compromised and is now in the hands of the same cyberthieves.

7        120.    Plaintiffs typically take measures to protect their Private Information, and they

8  are very careful about sharing their Private Information. Plaintiffs have never knowingly

9  transmitted unencrypted Private Information over the internet or any other unsecured source.

10        121.    Plaintiffs store any documents containing their Private Information in a safe and

11  secure location. Moreover, Plaintiffs diligently choose unique usernames and passwords for

12  their online accounts.

13        122.    Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses

14  such as loans opened in their names, tax return fraud, utility bills opened in their names, and

15  similar identity theft.

16        123.    Plaintiffs and Class Members face substantial risk of being targeted for future

17  phishing, data intrusion, and other illegal schemes based on their Private Information as

18  potential fraudsters could use that information to target such schemes more effectively to

19  Plaintiffs and Class Members.

20        124.    Plaintiffs and Class Members will also incur out-of-pocket costs for protective

21  measures such as credit monitoring fees (for any credit monitoring obtained in addition to or in

22  lieu of the inadequate monitoring offered by Defendants), credit report fees, credit freeze fees,

23  and similar costs directly or indirectly related to the Data Breach.

24        125.    Plaintiffs and Class Members also suffered a loss of value of their Private

25  Information when it was acquired by the hacker and cyber thieves in the Data Breach.

26  Numerous courts have recognized the propriety of loss of value damages in related cases.

CLASS ACTION COMPLAINT - 26

126.    Plaintiffs and Class Members have spent and will continue to spend significant amounts of time monitoring their financial accounts and records for misuse.

127.    Plaintiffs have spent many hours over the course of several days attempting to verify the veracity of the notice of the breach that they received and to monitor their financial and online accounts for evidence of fraudulent activities.

128.    Plaintiffs and Class Members have suffered actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a.    Finding fraudulent loans, insurance claims, tax returns, and/or government benefit claims;

b.    Purchasing credit monitoring and identity theft prevention;

c.    Placing "freezes" and "alerts" with credit reporting agencies;

d.    Spending time on the phone with or at a financial institutions or government agencies to dispute fraudulent charges and/or claims;

e.    Contacting financial institutions and closing or modifying financial accounts;

f.    Closely reviewing and monitoring their Social Security Numbers, bank accounts, and credit reports for unauthorized activity for years to come.

129.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of the Defendants, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing sensitive and confidential personal, health, and/or financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

130.    Further, as a result of Defendants' conduct, Plaintiffs and Class Members are forced to live with the anxiety that their Private Information may be disclosed to the entire

CLASS ACTION COMPLAINT - 27

world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

131.    As a direct and proximate result of Defendants' actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and are at a present and imminent and increased risk of future harm.

**CLASS REPRESENTATION ALLEGATIONS**

132.    Plaintiffs bring this class action on behalf of themselves and, pursuant to Federal Rule of Civil Procedure 23, on behalf of a Class defined as follows:

> All residents of the United States identified by Defendants (or their agents or affiliates) as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "Class").

133.    Excluded from the Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of the Defendants. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

134.    **Numerosity, (Fed. R. Civ. P. 23(a)(1))**: The Class is so numerous that joinder of all members is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, based on information and belief, the Class consists of thousands of individuals whose sensitive data was compromised in the Data Breach.

135.    **Commonality, (Fed. R. Civ. P. 23(a)(2))**: Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These common questions include, but are not limited to, the following:

   a.    Whether Defendants unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' Private Information;

   b.    Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information

CLASS ACTION COMPLAINT - 28

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1        compromised in the hacking incident and Data Breach;

       c.   Whether Defendants' data security systems prior to and during the hacking

           incident and Data Breach complied with applicable data security laws and

           regulations, *e.g.*, FTC Guidelines, HIPAA, etc.;

       d.   Whether Defendants' data security systems prior to and during the Data Breach

           were consistent with industry standards;

       e.   Whether Defendants owed a duty to Class Members to safeguard their Private

           Information;

       f.    Whether Defendants breached their duty to Class Members to safeguard their

           Private Information;

       g.   Whether computer hackers obtained Class Members' Private Information in the

           Data Breach;

       h.   Whether Defendants knew or should have known that its data security systems

           and monitoring processes were deficient;

       i.    Whether Defendants owed a duty to provide Plaintiffs and Class Members

           timely notice of this Data Breach, and whether Defendants breached that duty to

           provide timely notice;

       j.    Whether Plaintiffs and Class Members suffered legally cognizable damages as a

           result of Defendants' misconduct;

       k.   Whether Defendants' conduct was negligent;

       l.    Whether Defendants' conduct was per se negligent;

       m.  Whether Defendants were unjustly enriched;

       n.   Whether Defendants' conduct violated federal law;

       o.   Whether Defendants' conduct violated state law;

       p.   Whether the Plaintiffs and Class Members are entitled to damages, civil

           penalties, and/or punitive damages.

CLASS ACTION COMPLAINT - 29

136.    Common sources of evidence may also be used to demonstrate Defendants' unlawful conduct on a class-wide basis, including, but not limited to, documents and testimony about its data and cybersecurity measures (or lack thereof); testing and other methods that can prove Defendants' data and cybersecurity systems have been or remain inadequate; documents and testimony about the source, cause, and extent of the Data Breach; and documents and testimony about any remedial efforts undertaken as a result of the Data Breach.

137.    **Typicality**, **(Fed. R. Civ. P. 23(a)(3))**: Plaintiffs' claims are typical of those of other Class Members because all had their Private Information compromised as a result of the Data Breach and due to Defendants' misfeasance.

138.    **Adequacy**, **(Fed. R. Civ. P. 23(a)(4)):** Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class.  Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

139.    **Predominance, (Fed. R. Civ. P. 23(b)(3)):** Defendants have engaged in a common course of conduct toward Plaintiffs and Class Members, in that Plaintiffs' and Class Members' data was stored on the same computer systems and were unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

140.    **Superiority and Manageability, (Fed. R. Civ. P. 23(b)(3)):** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    common claims in a single forum simultaneously, efficiently, and without the unnecessary

2    duplication of evidence, effort, and expense that hundreds of individual actions would require.

3    Class action treatment will permit the adjudication of relatively modest claims by certain Class

4    Members, who could not individually afford to litigate a complex claim against a large

5    corporation, like the Defendants. Further, even for those Class Members who could afford to

6    litigate such a claim, it would still be economically impractical and impose a burden on the

7    courts.

8         141.    The nature of this action and the nature of laws available to Plaintiffs and Class

9    Members make the use of the class action device a particularly efficient and appropriate

10   procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because

11   Defendants would necessarily gain an unconscionable advantage since they would be able to

12   exploit and overwhelm the limited resources of each individual Class Member with superior

13   financial and legal resources; the costs of individual suits could unreasonably consume the

14   amounts that would be recovered; proof of a common course of conduct to which Plaintiffs

15   were exposed is representative of that experienced by the Class and will establish the right of

16   each Class Member to recover on the cause of action alleged; and individual actions would

17   create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

18        142.    The litigation of the claims brought herein is manageable. Defendants' uniform

19   conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class

20   Members demonstrate that there would be no significant manageability problems with

21   prosecuting this lawsuit as a class action.

22        143.    Adequate notice can be given to Class Members directly using information

23   maintained in Defendants' records.

24        144.    Unless a Class-wide injunction is issued, Defendants may continue in their

25   failure to properly secure the Private Information of Class Members, Defendants may continue

26

CLASS ACTION COMPLAINT - 31

1    to refuse to provide proper notification to Class Members regarding the Data Breach, and

2    Defendants may continue to act unlawfully as set forth in this Complaint.

3        145.    Further, Defendants have acted or refused to act on grounds generally applicable

4    to the Class, making final injunctive relief or corresponding declaratory relief appropriate with

5    respect to the Class as a whole under Federal Rule of Civil Procedure 23(b)(2).

6        146.    Likewise, certification under Federal Rule of Civil Procedure 23(b)(3) is

7    appropriate because common questions of law and fact predominate over any questions

8    affecting only individual members, and class treatment is superior to other available methods

9    for the fair and efficient adjudication of this controversy. Such common issues include, but are

10   not limited to, the following:

11       a.   Whether Defendants owed a legal duty to Plaintiffs and Class Members to

12            exercise due care in collecting, storing, using, and safeguarding their Private

13            Information;

14       b.   Whether Defendants breached a legal duty to Plaintiffs and Class Members to

15            exercise due care in collecting, storing, using, and safeguarding their Private

16            Information;

17       c.   Whether Defendants failed to comply with its own policies and applicable laws,

18            regulations, and industry standards relating to data security;

19       d.   Whether Defendants adequately and accurately informed Plaintiffs and Class

20            Members that their Private Information had been compromised;

21       e.   Whether Defendants failed to implement and maintain reasonable security

22            procedures and practices appropriate to the nature and scope of the information

23            compromised in the Data Breach;

24       f.   Whether Defendants engaged in unfair, unlawful, or deceptive practices by

25            failing to safeguard the Private Information of Plaintiffs and Class Members;

26            and,

CLASS ACTION COMPLAINT - 32

g.   Whether Class Members are entitled to actual, consequential, and/or nominal

damages, and/or injunctive relief as a result of Defendants' wrongful conduct.

147.   Defendants acted on grounds that apply generally to the Class as a whole, so that

Class certification and the corresponding relief sought are appropriate on a Class-wide basis.

148.   Finally, all members of the proposed Class are readily ascertainable. Defendants

had access to Class Members' names and addresses affected by the Data Breach. Class

Members have already been preliminarily identified and sent notice of the Data Breach by the

Defendants.

**CAUSES OF ACTION**

**FIRST COUNT**
**NEGLIGENCE**
**(On Behalf of Plaintiffs and the Class)**

149.   Plaintiffs repeat and re-allege each and every factual allegation contained in all

previous paragraphs as if fully set forth herein.

150.   Plaintiffs bring this claim individually and on behalf of the Class Members.

151.   Defendants knowingly collected, came into possession of, and maintained

Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care

in safeguarding, securing and protecting such information from being compromised, lost,

stolen, misused, and/or disclosed to unauthorized parties.

152.   Defendants had, and continue to have, a duty to timely disclose that Plaintiffs'

and Class Members' Private Information within their possession was compromised and

precisely the type(s) of information that were compromised.

153.   Defendants had a duty to have procedures in place to detect and prevent the loss

or unauthorized dissemination of Plaintiffs' and Class Members' Private Information.

154.   Defendants owed a duty of care to Plaintiffs and Class Members to provide data

security consistent with industry standards, applicable standards of care from statutory

authority like HIPAA and/or Section 5 of the FTC Act, and other requirements discussed

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  herein, and to ensure that their systems and networks, and the personnel responsible for them,

2  adequately protected the Private Information.

3       155.    Defendants' duty of care to use reasonable security measures arose as a result of

4  the special relationship that existed between Defendants and the Class Members, which is

5  recognized by laws and regulations, as well as common law. Defendants were in a position to

6  ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class

7  Members from a data breach.

8       156.    In addition, Defendants had a duty to employ reasonable security measures

9  under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair

10  . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the

11  unfair practice of failing to use reasonable measures to protect confidential data.

12       157.    Defendants' duty to use reasonable care in protecting confidential data arose not

13  only as a result of the statutes and regulations described above, but also because Defendants are

14  bound by industry standards to protect confidential Private Information.

15       158.    Defendants systematically failed to provide adequate security for data in its

16  possession.

17       159.    The specific negligent acts and omissions committed by the Defendants include,

18  but are not limited to, the following:

19          a.   Upon information and belief, mishandling emails, so as to allow for

20             unauthorized person(s) to access Plaintiffs' and Class Members' Private

21             Information;

22          b.   Failing to adopt, implement, and maintain adequate security measures to

23             safeguard Class Members' Private Information;

24          c.   Failing to adequately monitor the security of their networks and systems;

25          d.   Failure to periodically ensure that their computer systems and networks had

26             plans in place to maintain reasonable data security safeguards.

CLASS ACTION COMPLAINT - 34

160.    Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within Defendant's possession.

161.    Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' Private Information.

162.    Defendants, through their actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiffs and Class Members that the Private Information within Defendants' possession might have been compromised and precisely the type of information compromised.

163.    It was foreseeable that Defendants' failure to use reasonable measures to protect Plaintiffs' and Class Members' Private Information would result in injury to Plaintiffs and Class Members.

164.    Defendants' breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised.

165.    As a result of Defendants' ongoing failure to notify Plaintiffs and Class Members regarding what type of Private Information has been compromised, Plaintiffs and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

166.    Defendants' breaches of duty caused Plaintiffs and Class Members to suffer from identity theft, loss of time and money to monitor their finances for fraud, and loss of control over their Private Information.

167.    As a result of Defendants' negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, and will be used for fraudulent purposes.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

168.     Plaintiffs seek the award of actual damages on behalf of the Class. Plaintiffs seek injunctive relief on behalf of the Class in the form of an order (1) compelling Defendants to institute appropriate data collection and safeguarding methods and policies with regard to patient information; and (2) compelling Defendants to provide detailed and specific disclosure of what types of Private Information have been compromised as a result of the data breach.

## SECOND COUNT
## UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Class)

169.     Plaintiffs repeat and re-allege each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

170.     Plaintiffs and Class Members conferred a monetary benefit on Defendants, by providing Defendants with their valuable Private Information.

171.     Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Private Information.

172.     Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

173.     Under the principles of equity and good conscience, Defendants should not be permitted to retain the monetary value of the benefit belonging to Plaintiffs and Class Members, because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

174.     Defendants acquired the monetary benefit and Private Information through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

CLASS ACTION COMPLAINT - 36

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

175.    If Plaintiffs and Class Members knew that Defendants had not secured their Private Information, they would not have agreed to provide it to the Defendants.

176.    Plaintiffs and Class Members have no adequate remedy at law.

177.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control or direct how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as the Defendants fail to undertake appropriate and adequate measures to protect Private Information in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

178.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

179.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that it unjustly received from them.

## THIRD COUNT
### DECLARATORY JUDGEMENT AND INJUNCTIVE RELIEF
### (On Behalf of Plaintiffs and the Class)

180.    Plaintiffs repeat and re-allege each and every factual allegation contained in all

CLASS ACTION COMPLAINT - 37

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

previous paragraphs as if fully set forth herein.

181.    Plaintiffs pursue this claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

182.    Defendants owe a duty of care to Plaintiffs and the Class that require it to adequately secure Plaintiffs' and Class Members' Personal Information.

183.    Defendants failed to fulfill their duty of care to safeguard Plaintiffs' and Class Members' Personal Information.

184.    Plaintiffs and the Class are at risk of harm due to the exposure of their Personal Information and Defendants' failure to address the security failings that lead to such exposure.

185.    Plaintiffs, therefore, seek a declaration that (1) Defendants' existing security measures do not comply with their explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' personal information, and (2) to comply with their explicit or implicit contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

    a.   Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering the Defendants to promptly correct any problems or issues detected by such third-party security auditors;

    b.   Engaging third-party security auditors and internal personnel to run automated security monitoring;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

c. Auditing, testing, and training its security personnel regarding any new or modified procedures;

d. Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems;

e. Conducting regular database scanning and security checks;

f. Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

g. Purchasing credit monitoring services for Plaintiffs and the Class for a period of ten years; and

h. Meaningfully educating Plaintiffs and the Class about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, prays for relief as follows:

a. For an Order certifying this case as a class action and appointing Plaintiffs and Plaintiffs' counsel to represent the Class;

b. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1      c.   For equitable relief compelling Defendants to utilize appropriate methods and

2           policies with respect to consumer data collection, storage, and safety, and to

3           disclose with specificity the type of Private Information compromised during the

4           Data Breach;

5      d.   For equitable relief requiring restitution and disgorgement of the revenues

6           wrongfully retained as a result of Defendants' wrongful conduct;

7      e.   Ordering Defendants to pay for not less than three years of credit monitoring

8           services for Plaintiffs and the Class;

9      f.   Ordering Defendants to disseminate individualized notice of the Data Breach to

10          all Class Members;

11      g.   For an award of actual damages, compensatory damages, statutory damages, and

12          statutory penalties, in an amount to be determined, as allowable by law;

13      h.   For an award of attorneys' fees and costs, and any other expenses, including

14          expert witness fees;

15      i.   Pre- and post-judgment interest on any amounts awarded; and

16      j.   Such other and further relief as this court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all triable issues.

DATED this 31st day of October, 2025.

TOUSLEY BRAIN STEPHENS PLLC

By: *s/Joan M. Pradhan*
    Joan M. Pradhan, WSBA #58134
    jpradhan@tousley.com
    1200 5th Avenue, Suite 1700
    Seattle, WA 98101

CLASS ACTION COMPLAINT - 40

1                   T: 206.682.5600

2                   Bryan L. Bleichner*

3                   Philip Krzeski*

                     **CHESTNUT CAMBRONNE PA**

4                   100 Washington Avenue South, Suite 1700

                     Minneapolis, MN 55401

5                   Telephone: (612) 339-7300

                     Facsimile: (612) 336-2940

6                   *bbleichner@chestnutcambronne.com*

                     *pkrzeski@chestnutcambronne.com*

7

8                   *Counsel for Plaintiffs and the Proposed Class*

9                   *Pro Hac Vice* forthcoming

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT - 41

Tousley Brain Stephens PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

# EXHIBIT A

EXHIBIT A

PGUS/VDSTPDN100/ABT896092205/67675/000018954

**CareNexa, LLC**
**dba Molecular Testing Labs**
Return mail will be processed by: IBC
PO Box 847
Holbrook, NY 11741



||ᵐ||ᵗ||ᵗⁿ||ᵗ||ᵗ||ᵗ|ᵗ|ᵗ||ᵗ|ᵗᵗᵗᵗ|ᵗ||ᵗᵗ|ᵗ|ᵗ|ᵗ||ᵗⁿᵗᵗ|ᵗ|ᵗ
ANGELINA M GILLARD
205 Pride Cir
Pelham, AL 35124-1646

October 13, 2025

## NOTICE OF DATA INCIDENT

Dear Angelina M Gillard:

A data hosting and security vendor retained by CareNexa, LLC, dba Molecular Testing Labs ("MTL") experienced a data incident which may have affected your personal information. Based on our current review, we have no indication that your personal information has been or will be used inappropriately, but we wanted to make you aware of the incident, the measures we have taken in response, and to provide details on the steps you can take to help protect your information. We take the protection and proper use of your information seriously and are working to prevent a similar incident from occurring again in the future.

### What Happened

On or about March 11, 2025, discovered that a data hosting and security vendor retained by MTL had experienced a cyber security incident impacting MTL systems and data. We promptly launched an investigation, engaged a national cybersecurity firm to assist in assessing the scope of the incident and took steps to mitigate the potential impact to our community. Unfortunately, these types of incidents are becoming increasingly common and organizations with some of the most sophisticated IT infrastructure available continue to be affected. A third-party forensic investigation completed on September 22, 2025 determined the incident occurred on or about March 7, 2025, to on or about March 11, 2025.

### What Information Was Involved

Following a diligent review of the impacted data set, we determined the elements of your personal information that may have been impacted may have included, and potentially were not limited to, your Date of Birth;Date of Collection;Diagnosis Code;DL Num;DL State;Full Face Photo;Gender;Health Plan Group Policy #;Health Plan Member ID;Health Plan Provider Name;Height & Weight;Lab Results;Medications;Patient Address;Patient ID;Patient Name;Phone Num;Provider Info;Full SSN;Tracking No. Please note that we have no evidence at this time that any of your personal information has been or will be misused as a result of the incident.

### What We Are Doing

Upon discovering the incident, we promptly launched an investigation, engaged a national cybersecurity firm to assist in assessing the scope of the incident and notified law enforcement. As part of our ongoing commitment to the security of information, we are evaluating opportunities to further secure our systems to prevent a similar event from occurring again in the future.